Case number 16-5330, Reba B. Ransom, Appellant v. David J. Shulkin, Secretary of Veterans Affairs. Mr. Selvidge for the Appellant, Mr. Simon for the Athlete. If it please the Court, I'm Bob Selvidge, the lead counsel for Ms. Ransom, the Appellant. With me at counsel table is Lauren Marsh-Dravic, who is the co-counsel. Before we get too far into the case, I'm hoping to have the opportunity now to just say a couple of sentences that I think will frame it up and perhaps show that this whole case was taken down a rabbit hole below. The first is that everybody knew that this was one case, and not two, when I'm speaking of one case, the two removals. The Department of Veterans Affairs, when it issued the second removal, stated that Ms. Ransom had appeal rights to the MSPB, not that she had the right to start the Title VII administrative process again. When it was before the MSPB, they introduced the second removal decision in support of their appeal. When the MSPB decided it, it was based on the second removal decision, not the first one. The only other point, if I could, that I'd like to make is that when a case is decided at that level, the MSPB, and it was decided as one case, the government does not have the right to come into federal court and say, we're only going to look at the first case. They don't have the right to do that under the Civil Service Reform Act. In fact, because OPM didn't do it, nobody did. So the fact that Judge Leon focused exclusively on the first removal shows that, in fact, he plainly erred there, because the only thing, the one thing that was before the court was the case as a whole, which was the second removal. Thank you, Your Honor, for letting me do that. The plaintiff is the master of her own complaint, and there's no question you could have, when you first went to court, you could have challenged the second removal and anything else you wanted, but the original complaint challenged only the July 2011 removal. That's how you pled, or your predecessor counsel pled the case. Correct. I think the fact is that that is why we moved for leave to amend, so that it would be clearer. So when you make an amendment that seeks to expand the scope of the case, and says not only July 2011, but everything forward to June 2012, a year later, and everything backward, all the subsidiary decisions of the IG referral and the administrative leave, all of those are different acts, different times, different actors. And our cases are clear that when you try to introduce a different adverse employment action, that does not relate back. With all due respect, sir, I don't think that's correct. It was the same people, the same IG report, the same everything. And in fact, however you looked at it in any event, even if you looked at it that way, it wouldn't make the slightest bit of difference. Because the fact remains that even when facts occur after an employment action, they are still relevant. Your amended complaint sought to expand the scope of the case to include the investigation, the administrative leave, the withheld information, the proposed termination, and two terminations. And those run, the referral was made in March or April of 2011, right? The proposed removal was May of 2011. The second removal decision was a year later. And each of them, on your account, implicate different decision makers. You complain with regard to the referral to investigation. You talk about the animus of Mr. Day. With regard to withheld information, your complaint focuses on Ms. Regan. And with regard to the proposed termination, that's Duncan. So you're introducing different acts at different times with different decision makers. I don't think that that's correct with all due respect, sir. I think, first of all, I don't remember if those were pled in separate counts or not. But what I do know is on this appeal, what we have focused on is the first removal and the second removal. And that is what we focused the appeal on, and that that is where the error was committed below. Those are about a year apart. So why wouldn't they fail under our test of different time? Well, I'm looking at the decision of the circuit, and I don't know exactly how to pronounce the name, but I do know it was written by Judge Ginsburg. And it was not the Supreme Court's decision, which is a similar name, but it's the other one, when he clearly distinguished between the case of generic drugs and said in the first case there was a challenge based upon the holder of the patent of the non-generic drug to misuse the litigation and administrative processes to run the non-generic, the generic drug maker out of business. That's Meyer? Correct. And Judge Ginsburg says if you seek to challenge different conduct, the amendment doesn't relate back. I don't agree with that, sir. What it says is that in that case there were different claims at issue. That was what it turned on, was the conspiracy was the second claim, and the first claim was on the use of litigation and administrative processes as a sham to try and drive that person out. In the Meyer case, one of the biggest reasons that the second, that the amended complaint was not accepted was that it included more defendants. It was thus a different legal theory, different facts, and different defendants. That was the distinction in the Meyer case. There were different claims here, too. I do not agree. Retaliation only in the first complaint, and now you're seeking to introduce discrimination and three counts on what happened after the decisions before the MSPB. No, the decision happened while it was before the MSPB. It happened while the case was on appeal at the MSPB, was when the second removal was decided. What about the question Judge Katz has just asked you, that the amended complaint seeks to add a different theory, and that is racial discrimination as opposed to retaliation? Retaliation, when it arises out of a later set of facts, is typically considered and usually considered a separate claim. But when it arises out of the same set of facts, I'm not aware of a case that says that... Did you represent the plaintiff in the district court? District court here, yes. Was there a reason why you didn't make the racial discrimination claim in the original complaint? You mean back in Kansas City? Yeah, in the original complaint. I was not at the counsel then. Oh, you weren't? No. Do you know why counsel didn't do it? All I can say is it's nothing I can disclose. They were conversational. No, it was conversation between myself, the client, and the other counsel. That's a perfectly appropriate answer to my question. The answer is what happened happened. Yeah, I get you. But what about the agency's argument that by exhausting that claim and then not including it in the complaint, they effectively notified the agency that they would not be pursuing it, and they cite our decision in Jones for that proposition. Well, I don't think that there's any credible argument for that. Wait, for what? No credible argument for what? No, I'm sorry, that it was two separate claims. No, I was just asking you, the agency says in its brief, look, by exhausting the racial discrimination complaint and not putting it in the complaint, you effectively notified us that you wouldn't be pursuing it. Now, you say there's effectively no difference between the two complaints? Well, now perhaps I can go back to that question. But the fact is, I mean, to prove a retaliation claim, you rely on completely different kinds of evidence than you do to prove a racial discrimination complaint. You might, but you don't always have to. And in this case, it would be very simple not to have to because it would be the same facts and the difference, and this is the retaliation claim if we wanted to stay on that track. This is what Judge Leon failed to consider by sticking with the first claim. If you were to go to a jury, would it be permissible for a jury to find retaliation if someone was charged with three causes of action, let's say, three claims against them, two of them where one comes back, and the one comes back is based on a credibility determination. It is balancing the credibility of Ms. Ransom against Mr. Seitz. The judge then said there's no evidence of any retaliatory intent. Ms. Christ had just sat through two days of an MSPB hearing when she was charged with racial discrimination and retaliation. She had every motive in the world. And so if you brought that back to a jury when you have plainly, plainly, that the basis was not there for the original decision, when she was charged in a hearing with discriminating and retaliating and turned right around and removed her, and removed Ms. Ransom based on a credibility determination, that the Reeves decision by the Supreme Court, this court's en banc decision in ACCA, says you cannot make a summary judgment. Any reasonable juror in the world, even, even, even, if all that was before the court below was the retaliation decision, and one way or another, the fact that facts happen after a decision doesn't matter, is with all due respect, sir, not correct. Here is a perfect example. Ms. Christ put Mr. Seitz into the job after Ms. Ransom was let go. That is often the way every case of discrimination and retaliation comes up. A qualified protect, someone in a protected category, loses out on a job where it's not, it's not filled, and six months later it is filled with somebody who's completely unqualified for the job. You could have a circumstance where the person made admissions of racial discrimination after firing the person. Use the N word about them. But it happened the next day. It doesn't make any difference that the evidence comes up the next day. And whether you treat it as one retaliation case with evidence, or as we believe, one retaliation case based on the final decision, in the end, what the judge did below was a complete abuse of discretion that we say should be reversed by the court. Thank you. May it please the Court, Jeremy Simon on behalf of the appellee. I believe Mr. Selden's argument at the end emphasizes why the second removal decision is distinct from the first, why it involves different alleged conduct. I believe Mr. Selden has just argued that circumstances occurring after the July 2011 decision, while the matter was before the MSPB, would be raised by him to support an argument that the second removal decision was retaliatory because Ms. Christ was in the MSPB hearing listening to the evidence and following that initial February 2012 decision at the direction of that panel, issued a new penalty determination. And it sounds like Pellon is trying to say, well, that contemporaneous or the close in time nature of that was further evidence of, or evidence of retaliation as to the second removal decision. Well, none of those facts are in the first complaint. The first complaint very clearly is limited to the July 2011 removal decision. So very clearly the conduct on which a claim of retaliation with respect to the second removal decision would be based is different from the conduct identified in the original complaint. So under the court's precedent, and in particular the Jones v. Bernanke decision, it is very clearly a different time and different type of conduct. Suppose this had been a much narrower amendment limited to one of the issues that's focused on in the brief, which is you have the first complaint as is, which is limited to retaliation and the adverse action is the first removal. And hypothetically suppose that the proposed amendment had said, all I want to do is add a new count that the first removal was not only retaliatory but discriminatory. Could they do at least that much? Well, again, to emphasize that is a hypothetical. I understand. Because the only complaint was the kitchen sink approach that was presented to the district court. But on this record I would say no for three reasons. First, outreach. Same time, same conduct, different motive. But I would submit, Your Honor, a different type of conduct because retaliation is a different type of conduct. It depends on what the word conduct means, right? Is the conduct the termination or is the conduct the termination for retaliatory reasons? Isn't that the issue that works in Judge Katz's question? Yes. If it's the event, if it's the termination, then obviously the amendment that he hypothesized would be permitted, right? Well, no, Your Honor, for two reasons. First, the law does distinguish between retaliation and discrimination. In fact, Title VII does so in many respects. And in a related context of exhaustion, based on a prior charge of retaliation, courts have held that you cannot bring into court a race discrimination claim if all that was exhausted was retaliation. Well, but in this case, that's been exhausted. Yes. I'm just – Okay, so stick with the hypothetical. It's an exhausted claim, racial discrimination. And the second reason – so I submit it's a different type of conduct. The second reason, Your Honor, is the one – Well, of course it is. That's why they're filing an amended complaint. But the test by the Supreme Court is the time and type. And so that's why we submit it would not – to the motive of the actor. But underlying the relation back concept is the issue of notice. The underlying question is whether the original complaint adequately notified the basis of liability that would be advanced. And the second reason I would submit, Your Honor, is the one that Judge Saylor, you pointed out, from the Jones v. Bernanke decision, where the court said that the fact that a claim had been exhausted administratively and then not raised in the original complaint. Now, in that case, though – right. But in that case, the two events – there were two different events that were the subject of the complaint. There was a previous one and then a later one. Whereas Judge Katz, this is hypothetical to you, is that there's just one event, namely a termination. So I see your point. That's why I asked the question. But do you think the Jones theory that the omission of the claim from the amended complaint was – I'm sorry, that the omission of the claim from the original complaint was effective notice, the plaintiff didn't pursue it, would apply where there's one event as opposed to two as there was in Jones? I would. Because the concept is whether the defendant has been put on notice that – But you see the difference. In Jones, there was no notice that the second action against the employee – Here. There was no action. There was no notice that the second – Here. In Jones – Okay. Okay. Yeah. See, in Jones, they differed in both time and type from the original complaint. Whereas the hypothetical that's on the table here is that they don't. It's one termination. So my only question is, would the Jones theory that the omission of the racial discrimination complaint from the original complaint effectively notified the agency that they wouldn't pursue it, would that apply in a situation where there's just one event, and why? Well, I would have to refer the Court to the record here, which is a very bare-bones original complaint. Yeah. That is 12 paragraphs long, and when you omit the venue, parties, it's essentially three, maybe, paragraphs of factual assertion. And I would submit that in that context, after such an extensive proceeding before the MSPB, that the Jones observation is apt here. But there's also a third reason, which was alluded to in the appellant's reply on page 9, when appellant said the original decision, July 2011, was remedied, and therefore there is no issue to pursue because it has been remedied. Now, in the adverse employment context, which is applicable to a race claim, this Court's precedent in Taylor v. Small would hold that a remedied initial removal decision would not be actionable. In contrast, the original complaint that proceeded through summary judgment only asserted a retaliation claim based on that original decision, and under the Burlington line of authority, because of the different test for materially adverse action and retaliation, that is not, it's a different question there. So, although that argument was not raised in defendant's opposition below, it's been alluded to here in the appellant's reply, and would be yet another reason why amending the complaint to add a race discrimination claim based on the July 2011 removal would be futile. It's clear that you can amend to add a new legal theory, right? I sue on, you know, I'm injured by a product, complaint number one, strict liability, complaint number two, negligence, relates back, right? So why isn't this akin to that? Yes, retaliation is different from discrimination, but it's a different motive, but that's more like a new legal theory than it is like a new adverse employment action or new occurrence in the language of the rule. The case law that talks about new legal theory, it seems to me it goes in different directions based on what's been pled in the original complaint, and I would just submit that here this is such a bare bones original complaint that on this record those cases would not be applicable because those had a much broader foundation to build upon. If the Court doesn't have any other questions on the amendment issue, I'd like to briefly turn to the summer judgment decision. Just to remind the Court that which has gotten a little bit lost  This is a case where an independent OIG, where independent OIG investigators determined that Ms. Ransom popped a subordinate on the head, those were her original words, lied to investigators, and manufactured a claim that the subordinate who made the complaint about her was mentally unstable and a danger to the office. Add to that the fact that the person who referred the matter to the IG for investigation, Dr. Day, had just promoted Ms. Ransom about four or five months earlier, and under the Vattel and Waterhouse line of authority, there is a significant hurdle that plaintiff has to overcome here, and we would submit that as we've established in our filing that they've fallen far short of that. If there are no further questions, we would ask that the Court affirm the decision of the District Court. Thank you. Mr. Sullivan. The problem with what Mr. Simon said is it's not really the way it occurred. The IG report was concerned with one charge. It was about an assault, and that was voided for the simple reason that there was no proof that came out at the MSPB proceeding that Ms. Ransom wanted to hurt Mr. Seitz. That's a basic element of assault. It was voided because the ALJ thought the only allegation was a criminal assault. The ALJ credited the testimony that this was an unwanted touching, that it was engaged in with some force, and that your client wasn't truthful in her response to the ensuing investigation. Two different things there, Your Honor. One is that the agency did not rely on the assault charge in the end, and the government can't rely on that when it comes to court now because it doesn't have the right to appeal that. We can if we're talking about the first decision. No. The decision that was at the MSPB supported the removal because of the one charge, which was misrepresentation. Suppose we think that the case is about the July 2011 removal decision. When that decision was made, the decision-maker had before her an independent OHE investigation that found very serious misconduct. You can't slice and dice a case that way. You can't eliminate the fact that that decision was vitiated by a body that had the right to overlook it. It depends on which action we're looking at. Your Honor, I'm sorry. We have answered this. I've done the best I can. I understand if the Court's not persuaded by it, but I can't say this any differently than I've said it. Facts come out that happened after an initial decision all the time. All the time. Okay. So let's assume for the sake of argument that you can challenge the second decision, the second removal decision which was made after the administrative proceedings ran their course. Even at the end of the second round of proceedings, the decision-maker had before her a sustained charge that your client lied to an Inspector General investigator in order to cover up a, I'm trying to think of a neutral word other than assault, a touching that was substantial, though not criminal. Well, the two things with that is that the IG report didn't find that. It said it appears to be false, but that wasn't the point. The larger point is that the decision the second time around was based on the MSPB finding, that there was some intent to deceive, if you will, potentially. Well, the problem with that is what they intended to deceive and who did. The MSPB evaluated the relative credibility of Mr. Seitz and Ms. Ransom in coming to that conclusion, and she said she observed the testimony of Mr. Seitz that he appeared to be genuinely troubled, and that's why he didn't file a report, and that's why he didn't tell Ms. Kubiak that he was hurt. And the point is, and I'll be done with it, that the point is that that's based on a credibility determination, and that determination can't be made on summary judgment under leaves in the Supreme Court. Thank you. Thank you, gentlemen. The case is submitted.
judges: Tatel, Katsas, Ginsburg